UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| VICTOR HERNANDEZ, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 21-01374 (RCL) |
| DISTRICT OF COLUMBIA, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

### MEMORANDUM ORDER

This matter is before the Court on Defendant District of Columbia's Motion to Dismiss Complaint ("MTD"), ECF No. 19, pursuant to Federal Rule 12(b)(6). For the reasons stated below, the Court grants the Motion and dismisses all claims against the District of Columbia, and it also dismisses all claims against the former Director of the D.C. Department of Corrections ("DOC") and its current Deputy Director.

### I.    BACKGROUND

**A. Procedural History**

Plaintiff Victor Hernandez, proceeding pro se and *in forma pauperis* ("IFP"), is a D.C. Code offender, *see* Compl., ECF No. 1, at 5, currently designated to USP Canaan, *see generally* docket; *see also* Pl.'s Not. Change of Address, ECF No. 23 (dated Oct. 3, 2022); Federal Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Feb. 27, 2023). Hernandez filed this lawsuit on May 17, 2021, against the DOC and DOC correctional officers "Corporal Dove," and "T. William," for damages arising from a motor vehicle accident that occurred while Hernandez was in DOC custody. *See* Compl. at 1, 3–6.

1

On February 25, 2022, the DOC moved to dismiss and/or for summary judgment, ECF No. 9, in response to the Complaint. On March 31, 2022, Hernandez moved for extension, ECF No. 13, to respond to the Motion to Dismiss, in which he also expressed his intention to imminently file an amended complaint. On April 18, 2022, the Court granted, by Minute Order, Hernandez's Motion as to the request for an extension, ordering him to file, by May 9, 2022, either an opposition to the Motion to Dismiss, or alternatively, an amended complaint of right, *see* Fed. R. Civ. P. 15(a)(1)(B).

Hernandez opted to file an Amended Complaint ("Am. Compl."), now operative, with a Supporting Memorandum ("Mem."), ECF No. 16, on May 11, 2022, seeking damages under 42 U.S.C. § 1983, *see* Am. Compl. at 2, 4; Mem. ¶¶ 4, 213–17. A few days later he filed a Supplement, ECF No. 17, to the Amended Complaint, which contains nearly identical allegations to those already set forth in the Supporting Memorandum. Although neither the Federal nor the Local Rules of Civil Procedure allow for such a Supplement, and Hernandez did not seek leave to file it, the Court has nonetheless considered it. *See Brown v Whole Foods Market Group, Inc.*, 789 F.3d 146, 151–52 (D.C. Cir. 2015) (per curiam) (finding that a district court must consider a pro se litigant's complaint "in light of all filings").

The Amended Complaint again names, as Defendants, correctional officers Dove (in his individual capacity only) and T. William (in her individual capacity only)—now referred to as "T. Williams," and it substitutes the District of Columbia for the DOC. Mem. ¶¶ 7, 10–12, 14. It also names, as new Defendants, former DOC Director, Quincy Booth (in both his official and individual capacities), and current DOC Deputy Director, Wanda Patten (in both her official and individual capacities). *Id*. ¶¶ 8–9, 13.

On May 18, 2022, the Court denied, by Minute Order, the pending Motion to Dismiss and/or for Summary Judgment without prejudice as moot, and after a single brief extension, *see* Def.'s Mot. for Extn., ECF No. 18; Minute Order (dated June 21, 2022), the District of Columbia filed its pending Motion to Dismiss on June 21, 2022.

On June 27, 2022, the Court entered an Order directing Hernandez to file a response to the District's Motion to Dismiss by July 24, 2022, and forewarned him that, should he fail to timely respond, the Court may rule on the Motion without the benefit of his position and/or may also dismiss the case. *See Fox* Order, ECF No. 20. Since that time, the Court granted Hernandez three extensions to his response deadline, *see* Order (dated Aug. 17, 2022) (granting Pl.'s First Mot. for Extn., ECF No. 21); Minute Order (dated Oct. 6, 2022) (granting Pl.'s Second Mot. for Extn., ECF No. 23); Minute Order (dated Dec. 16, 2022) (granting Pl.'s Third Mot. for Extn., ECF No. 25), based on his contention that he was facing hardships accessing his legal mail and materials during and after his transfer to USP Canaan. On the latter two occasions, the Court also directed the Clerk of Court to mail Hernandez additional courtesy copies of all of the pertinent documents, *see* Minute Order (dated Oct. 6, 2022); Minute Order (dated Dec. 16, 2022). His most recent deadline to file a response to the Motion to Dismiss elapsed on February 3, 2023, *see* Minute Order (dated Dec. 16, 2022), and to date, he has neither filed a response to the Motion to Dismiss, nor has he requested another extension.

**B. Factual Background**

Hernandez contends that, on the morning of August 31, 2018, while in the custody of the DOC, *see* Mem. ¶¶ 6, 17, 120–21, he was scheduled for a non-emergency medical appointment at Howard University Hospital for a cyst removal, *see id*. ¶¶ 6, 116–17. Officers Dove and Williams were responsible for transporting Hernandez to this appointment; Dove was the driver of the transport vehicle, a 4-door Chevrolet Impala police cruiser, and Williams accompanied them in

the front passenger seat. *See id*. ¶¶ 115, 118–19. Hernandez alleges that he was placed in the backseat of the vehicle without a seatbelt. *See id.* ¶¶ 35, 38, 121. Then, while en route, Dove allegedly began driving recklessly, turning on the vehicle's emergency lights and siren despite the non-emergency nature of the trip, so that he could run red lights without caution. *See id*. ¶¶ 32, 122–24. Hernandez maintains that Williams witnessed all of Dove's alleged unlawful behavior and sat by silently, declining to intervene, and "appearing at ease and unconcerned." *See id*. ¶¶ 123–24, 143, 148–52.

The transport vehicle eventually collided with a civilian vehicle at the intersection of 9th Street and Florida Avenue N.W. *See id.* ¶ 33–34, 47–49, 125. Hernandez contends that he, Dove, and Williams were all injured, and that he was initially unconscious and transported to the hospital by ambulance. *See id*. ¶¶ 37, 126. He alleges that, once he awoke, Dove instructed him to lie to any investigators about the cause of the accident, more specifically, to concoct a story that Dove used his emergency lights and siren because Hernandez underwent a seizure. *See id*. ¶¶ 46, 126. Hernandez also alleges that Dove subsequently somehow interfered with his ability to seek administrative relief, *see id.* ¶ 51, and that Williams failed to report any of Dove's alleged misconduct, *see id*. ¶¶ 143, 148–52.

As a result of the accident, Hernandez alleges that he suffered permanent injuries to his head, face, neck, back, torso, and left leg, and that he has been diagnosed with post-traumatic stress disorder and generalized emotional distress, both of which require medication. *See id*. ¶¶ 37–39, 158–78.

## II.  LEGAL STANDARD

A plaintiff need only provide a "short and plain statement of [his] claim showing that [he] is entitled to relief," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (per curiam) (internal quotation marks and citation omitted), *cert. denied*, 568 U.S. 1088 (2013); *see Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

However, the Court "need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal*, 16 F.3d at 1276. Nor must the Court accept "a legal conclusion couched as a factual allegation," nor "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. And although a pro se complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson*, 551 U.S. at 94 (internal quotation marks and citation omitted), it still "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of [defendant's] misconduct,'" *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678–79), *cert. denied*, 559 U.S. 1039 (2010). Additionally, a court shall *sua sponte* dismiss a complaint filed by a pro se and IFP litigant when his pleading fails to state a claim upon which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), including and specifically those filed by prisoners, *see id.*; *see also id.* § 1915A(b)(1); *Baker v. Director, U.S. Parole Comm'n*, 916 F.2d

5

725, 727 (D.C. Cir. 1990) (per curiam) (affirming trial court's *sua sponte* dismissal pursuant to Fed. R Civ. P. 12(b)(6)).

### III. DISCUSSION

#### A. Claims Against the District of Columbia, Booth, and Patten

Hernandez sues the District for damages under 42 U.S.C. § 1983, *see* Am. Compl. at 2–4; Mem. ¶¶ 4, 190–93, 195, 197–99, 201–05, 213–17, which allows an individual, under specific circumstances, to sue a municipality for policies or practices that result in constitutional violations, *see Monell v. N.Y.C. Dept. of Soc. Serv.*, 436 U.S. 658, 694 (1978). He also sues Booth and Patten in their official capacities, *see* Am. Compl. at 2, 4; Mem. ¶¶ 4, 8–9, 13, 190–93, 195, 197, 198–99, 201–05, 213–17, but notably, an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity[,]" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996) (holding that official capacity claims are "equivalent to a suit against the municipality itself."). Consequently, the official-capacity claims against Booth and Patten must be dismissed as "redundant and an inefficient use of judicial resources." *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 49 (D.D.C. 2005) (collecting cases). Furthermore, the Court finds that Hernandez has fundamentally failed to state a municipal liability claim against the District, Booth, or Patten.

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. The statute "is not itself a source of substantive rights; rather, it is a method of vindicating federal rights conferred elsewhere." *Melton v. District of Columbia*, 85 F. Supp. 3d

6

183, 192 (D.D.C. 2015) (citing *Albright v. Oliver*, 510 U.S. 266, 269–70 (1994); *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)), *aff'd*, 2015 WL 9012019 (D.C. Cir. Oct. 30, 2015) (per curiam).

To state a claim for municipality liability, a plaintiff must first properly allege both (1) "a predicate constitutional violation" and (2) "that a custom or policy of the municipality caused the violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citing *Collins v. Harker Heights*, 503 U.S. 115, 124 (1992)). Additionally, that "policy or custom" must *itself* be the moving force behind the alleged constitutional violation. *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986) (citing *Monell*, 436 U.S. at 694); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."); *Okla. City v. Tuttle*, 471 U.S. 808, 817 (1985) (requiring a plaintiff to allege that a municipality deliberately pursued by the city establishing an affirmative link between the city's policy and the alleged constitutional violation).

Here, Hernandez asserts that these Defendants violated his constitutional rights under the Eighth and Fourteenth Amendments. *See* Am. Compl. at 4; Mem. ¶ 190. At the outset, the Court finds that neither the District nor its officials may be held liable under the Fourteenth Amendment because the District of Columbia is not a state. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *Propert v. District of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991); *Robinson v. Dist. of Columbia*, 200 F. Supp. 3d 104, 107 (D.D.C. 2016), *aff'd*, 686 Fed. Appx. 1 (2017). Notwithstanding, the protections of the *Fifth* Amendment extend to the District of Columbia, so

the Court will instead construe Hernandez's due process claims thereunder. *See Bolling*, 347 U.S. at 498–99.

Apart from this distinction, *see* MTD at 6–7, the District does not dispute that Hernandez failed to allege a predicate constitutional violation, focusing instead on "step 2" of the *Monell* inquiry, *see id.* at 2–7; *see also Baker*, 326 F.3d at 1306. Therefore, the primary question is whether the complaint state a claim against the District "that a custom or policy of the municipality caused the [alleged] violation." *See Baker*, 326 F.3d at 1306. Although a complaint "need not plead law or match facts to every element of a legal theory," *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000) (citations omitted), it shall "include some factual basis for the allegation of a municipal policy or custom," *Atchinson*, 73 F.3d at 422.

There are four ways in which a plaintiff may establish that a municipal policy caused a constitutional violation:

> (1) the municipality adopts a policy that itself violates the Constitution; (2) the unconstitutional action was taken by a 'policy maker' within the government; (3) the employees' unconstitutional actions 'are so consistent that they have become [a] custom' of the municipality of which the supervising policymaker must have been aware; or (4) the municipality knew or should have known of a risk of constitutional violations, but showed 'deliberate indifference' to that risk by failing to act.

*Hurd v. District of Columbia*, 997 F.3d 332, 337 (D.C. Cir. 2021) (quoting *Baker*, 326 F.3d at 1306) (other citation omitted). Hernandez does not contend that the District formally adopted an express policy, *see Baker*, 326 F.3d at 1306; *see also Monell*, 436 U.S. at 690, instead relying on an amalgamation of latter three theories of municipal liability. He alleges that Booth and Patten exhibited "silent acquiescence," and "encouraged, promoted, or had otherwise tacitly authorized" employees to improperly use their emergency lights and sirens, *see* Mem. ¶¶ 191–93, in other words—an alleged adoption by municipal policymakers, *see Baker*, 326 F.3d at 1306; *Triplett v.*

*District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997), of an unofficial policy or custom, *see Monell*, 436 U.S. at 690–91. He also alleges that the District, Booth, and Patten were all deliberately indifferent to his "health and safety" in emboldening those unsafe driving practices, *see* Mem. ¶¶ 190, 197, and by subjecting him to "substantial risk of harm" by allowing for his transport without a seatbelt, *see id.* ¶ 205, compounded by a "failure to provide [s]upervision or adequate policies," *see id.* ¶¶ 194–96, 199, 201–03, 205, in violation of their general purported responsibilities to inspect and monitor DOC vehicles and their operators, *see id.* ¶¶ 19, 21–31.

First, Hernandez fails to sufficiently allege the existence of an unofficial policy or custom, which "is considerably easier to define than it is to prove." *Lightfoot v. Dist. of Columbia*, 273 F.R.D. 314, 321 (D.D.C. 2011) (citing *Carter*, 795 F.2d at 122). A policy or custom must be "confined to those practices that have become . . . permanent and well settled[.]" *Id.* (quoting *Monell*, 436 U.S. at 691) (other citation and internal quotation marks omitted). A plaintiff must "present concentrated, fully packed, precisely delineated scenarios," *Parker v. District of Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988) (internal quotation marks omitted), *cert. denied*, 489 U.S. 1065 (1989), and a "catalog of disquieting events is not sufficient to demonstrate a pervasive pattern" where the "occurrences . . . do not coalesce into a discernible 'policy[.]'" *Carter*, 795 F.2d at 123–24.

The Amended Complaint is devoid of any details indicating that either the alleged non-emergency use of lights and sirens, or the transportation of prisoners without a seatbelt, was consistent enough to constitute a policy or custom. The only example that Hernandez provides is his own accident, and "a single incident of [alleged] unconstitutional activity is not sufficient to impose liability under *Monell*[.]" *Tuttle*, 471 U.S. at 823–24 (internal quotation marks omitted). There is no suggestion in the Amended Complaint of any other supporting scenarios. *See Trimble*

9

*v. District of Columbia*, 779 F. Supp. 2d 54, 59 (D.D.C. 2011) (granting the District and its officials' 12(b)(6) motion to dismiss where plaintiffs failed to "cite any incident other than the events alleged in [their] complaint that might provide a basis for concluding that MPD has any [unconstitutional] policies, practices, or customs"); *Thomas v. District of Columbia*, No. 21-cv-584, 2021 WL 5769443, at *2 (D.D.C. Dec. 6, 2021) (granting the District's 12(b)(6) motion to dismiss and finding that "[a] long line of cases in this district have found similarly sparse allegations of a policy or custom to be inadequate to state a claim") (citing *Wells v. Hense*, 235 F. Supp. 3d 1, 12–13 n.11 (D.D.C. 2017) (collecting cases)).

      Moreover, even if Hernandez had provided any additional scenarios, his existing allegations consist of only labels and conclusions, which fail to illustrate an "'affirmative link,' such that these alleged municipal policies were the 'moving force' behind the [alleged] constitutional violation[s]." *Baker*, 326 F.3d at 1306 (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)); *see Hernandez v. Dist. of Columbia*, 845 F. Supp. 2d 112, 118 (D.D.C. 2012) (granting 12(b)(6) the District's motion to dismiss municipal liability claims where plaintiff's "mere allegation that" an officer acted pursuant to the District's "employment policies or procedures" was "insufficient to provide an 'affirmative link' between the policy and the injury"). Hernandez frequently mentions the term "affirmative link," along with other legal elements and buzzwords, but he does not present any colorable facts in support of the authority cited. *See, e.g.*, Mem. ¶¶ 7–11, 17, 22, 27, 53–56, 190–205. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to state a claim. *Iqbal*, 556 U.S. at 678. It is unclear—apart from Hernandez's own assumptions and speculation—where, why, when, and most importantly, *how*, the District and its officials acquiesced, encouraged, promoted, or otherwise authorized, *see* Mem. ¶¶ 191–93, these alleged customs or policies.

These bare assertions, without more, are "too nebulous to support a claim against the District[.]" *Nelson v. Dist. of Columbia*, 928 F. Supp. 2d 210, 216 (D.D.C. 2013) (granting the District's 12(b)(6) motion to dismiss where plaintiff failed to state a custom or policy by broadly alleging that the District failed to exercise oversight over jail policies, and failed to train its guards––whose "custom" was disregarding prison cell inspections) (citing *Gabriel v. Corr. Corp. of Amer.*, 211 F. Supp. 2d 132, 140 (D.D.C. 2002); *see Miller v. Barry*, 698 F.2d 1259, 1261 (D.C. Cir. 1983) (per curiam) ("The mere assertion that the [employee] 'was acting fully within the scope of his employment and pursuant to the policies of defendant' is not specific enough to withstand dismissal."). Put differently, Hernandez has failed to plead that Dove and Williams followed "a course deliberately pursued by the city, as opposed to an action taken unilaterally by a nonpolicymaking municipal employee[.]" *Carter*, 795 F.2d at 122 (citation and internal quotation marks omitted).

Second, Hernandez has failed to sufficiently plead his claims through deliberate indifference. Deliberate indifference is "[c]losely related to and in many instances indistinguishable from the concept of municipal custom[.]" *Lightfoot*, 273 F.R.D. at 321. "The critical question[s]" are (1) whether the government failed to respond to a need, resulting in constitutional violations, and (2) whether the municipality knew or should have known of the risk of those constitutional violations. *Id.* (quoting *Baker*, 326 F.3d at 1307; citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994)). Mere negligence does suffice; deliberate indifference "does *not* require the city to take reasonable care to discover and prevent constitutional violations," but "simply means that, faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction." *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004) (emphasis in original). Here, there is no inference that the District

11

and its officials were aware of the alleged unsafe practices in advance of the motor vehicle accident, and a municipality must receive "notice of the risk *before* the constitutional tort occurred." *Williams v. Ellerbe*, 317 F. Supp. 3d 144, 149 (D.D.C. 2018) (emphasis in original); *see Nelson*, 928 F. Supp. 2d at 216 (dismissing plaintiff's deliberate indifference claims for the same defect). Therefore, his deliberate indifference claims cannot survive because Hernandez "fails to allege that the District had any advance notice or reason to believe" that the constitutional torts alleged here would later occur. *Williams*, 317 F. Supp. 3d at 149.

Seemingly anticipating this problem, Hernandez attempts to alternatively plead deliberate indifference through an alleged failure to train and supervise. *See* Mem. ¶¶ 194–96, 199, 201–03, 205. But again, regardless of the theory of municipal liability, Hernandez is *still* required to plead "actual facts that would constitute such deliberate indifference or put District officials on *notice* that its training program would cause a violation of constitutional rights." *Prince v. Dist. of Columbia*, No. 22-cv-746, 2022 WL 17415058, at *3 (D.D.C. Dec. 5, 2022) (emphasis added) (quoting *Bell v. District of Columbia*, 82 F. Supp. 3d 151, 157 (D.D.C. 2015) (internal quotation marks omitted). And again, a *pattern* of "similar constitutional violations by . . . employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train," *see Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Commrs. of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)), or alternatively, Hernandez must raise specific allegations that the District failed "to train its employees to handle *recurring* situations presenting an obvious potential for such a violation[,]" *Brown*, 520 U.S. at 409 (emphasis added). Hernandez does not provide any of those required examples or details.

Likewise, in raising a deliberate indifference claim, a plaintiff must allege that the "failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by

12

our prior cases—[and only then] can a city be liable for such a failure under § 1983." *City of Canton*, 489 at 389. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390–91 (citations omitted). Thus, it is not enough that Hernandez solely implicates Dove and Williams, or "point[s] to something the city 'could have done' to prevent the unfortunate incident." *Id.* at 392. "Rather, [he] must show that 'in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need[,]'" *Caldwell v. Dist. of Columbia*, 901 F. Supp. 7, 11 (D.D.C. 1995) (granting the District's 12(b)(6) motion to dismiss where plaintiff alleged that prison officers were inadequately trained, and that its emergency policy was inadequate, as those boilerplate legal conclusions were unsupported by facts) (quoting *City of Canton*, 489 U.S. at 390), *appeal dismissed,* 1996 WL 587652 (D.C. Cir. Sept. 16, 1996) (per curiam), but Hernandez has not done so. He neither provides any illustrative facts as to the District's training and supervision program, nor as to its alleged defects and instances of their recurrence.

Without these required facts, the District cannot be held liable for the alleged unconstitutional actions of Dove and Williams because there can be no vicarious liability for constitutional violations. *See Graham v. Davis*, 880 F.2d 1414, 1421 (D.C. Cir. 1989) (citing *Monell*, 436 U.S. at 691; *Tuttle,* 471 U.S. at 824 n.7). "This point of law is incontrovertible; it is directly established by Supreme Court and D.C. Circuit precedent." *Powers-Bunce v. District of Columbia*, 479 F. Supp. 2d 146, 157 (D.D.C. 2007); *see McRae v. Olive*, 368 F. Supp. 2d 91, 96

(D.D.C. 2005) (finding that the District is not responsible for the actions of its law enforcement officers "on a theory of *respondeat superior*.").

Third, Hernandez predicates his individual capacity claims against Booth and Patten on these same nebulous policymaking and failure to train/supervise allegations, *see* Mem. ¶¶ 21–26, 64–82, 90–107, 190–205, but aside from generally relying on their supposed generalized responsibilities to oversee DOC vehicles and staff, police reports, and medical records, *see id.*, the Amended Complaint contains no facts that pinpoint their personal involvement with Dove and Williams, or their actual involvement in any of the alleged circumstances. *See Jones v. Horne*, 634 F.3d 588, 602 (D.C. Cir. 2011) (affirming trial court's 12(b)(6) dismissal of individual capacity claims against warden where plaintiff failed to allege that defendant had any personal involvement in the incident or policies at issue, outside of his high-ranking position); *Jefferies v. District of Columbia*, 917 F. Supp. 2d 10, 25–26 (D.D.C. 2013) (granting District official's 12(b)(6) motion to dismiss individual capacity claims where no facts implicated her direct personal involvement in the circumstances "outside the mention of her official capacity as the Chief of Police who generally oversees all police activity"). Furthermore, "high-level public officials[,]" like Booth and Patten, "are not employers of their subordinates but rather are fellow governmental servants, and it is thus inappropriate to hold them liable on the basis of *respondeat superior*." *Haynesworth v. Miller*, 820 F.2d 1245, 1259 (D.C. Cir. 1987), *abrogated on other grounds, Hartman v. Moore*, 547 U.S. 250 (2006). The Court also notes the heightened pleading required of individual capacity claims brought against public officials, *see Martin v. Malhoyt*, 830 F.2d 237, 257 (D.C. Cir. 1987), but Hernandez does not set forth sufficient facts to elevate his claim above conclusory allegations to meet the minimal pleading standard. *See Pryor-El v. Kelly*, 892 F. Supp. 261, 276 (D.D.C. 1995).

Finally, Hernandez's assertions that he will be able to provide more specificity by and through discovery, *see* Mem. ¶¶ 40–44, 83–88, 108–113, 134, 154, "does not cure" these "pleading defect[s]." *Stoddard v. Dist. of Columbia*, 764 F. Supp. 2d 213, 220 (D.D.C. 2011) (granting the District's 12(b)(6) motion to dismiss municipal liability claims and denying leave to amend the complaint as futile where plaintiff failed to clearly allege the existence of a municipal policy or custom or its direct causal link to alleged Eighth Amendment deprivations).

In sum, Hernandez's supporting allegations are too general and conclusory to state a municipal liability claim against the District, Booth, or Patten, or to state an individual capacity claim against Booth or Patten. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.") (internal quotation marks and citation omitted). For all of the stated reasons, and because Hernandez has already had an opportunity to amend his complaint, all of the claims against those Defendants will be dismissed with prejudice.

### B. Claims Against Dove & Williams

Hernandez raises only individual capacity claims under § 1983 against Dove and Williams. *See* Mem. ¶¶ 10–11, 14. As discussed above, he alleges that Dove and Williams' failure to place him in a seatbelt, Dove's reckless driving—including the improper use of lights/sirens—resulting in the motor vehicle accident, Williams' failure to intervene, and their mendacious behavior following the accident, all show "deliberate indifference," and "wanton disregard for [his] [h]ealth and safety." *See id*. ¶¶ 114–33, 135–53, 182–88, 207–10. He contends that their actions infringed on his right "to be free from the substantial risk of harm and/or the substantial risk of serious harm," as a prisoner under the Eighth Amendment, and the Fourteenth Amendment—which the Court henceforth construes under the Fifth Amendment—thus causing his injuries. *See id*. ¶ 210. The Court finds that, at this stage, Hernandez has done enough to survive a *sua sponte* dismissal

of his individual capacity claims against Dove and Williams, *see West v. Atkins*, 487 U.S. 42, 48 (delineating the pleading standard for § 1983 individual capacity claims), although the Court cautions Hernandez that these claims may yet face additional challenges.

The Court notes that, despite ample time and forewarning, Hernandez failed to respond to the District's Motion to Dismiss, and he has also failed to otherwise participate in this case for about three months. Additionally, Dove and Williams have yet to be served. Because Hernandez is proceeding IFP, the Court is responsible for service of process. *See* 28 U.S.C. § 1915(d). After the filing of the original Complaint, the Clerk issued summonses for Dove and Williams, *see* Summonses, ECF No. 7, and the United States Marshals Service attempted service, but despite its efforts, the Marshals could not ultimately serve Dove or Williams, *see* Unexecuted Returns of Service, ECF No. 11.

Generally, IFP litigants should not be penalized for a Court officer's failure to effect service of process, *see Ray v. Experian, Inc.*, No. 08–cv-0114, 2009 WL 1255114, at *1 (D.D.C. Apr. 28, 2009); *Thomas v. Fed. Aviation Admin.*, No. 05–cv-2391, 2007 WL 219988, at *4 (D.D.C. Jan. 25, 2007). Nonetheless, the leeway afforded to IFP litigants has its limits. Hernandez has sued Dove and Williams in their *individual* capacities so, in addition to service on the District, they must be served *personally*, *see* Fed. R. Civ. P. 4(e); Super. Ct. Civ. R. Super. Ct. Civ. R. 4(j)(3)(E), and "a district court has no duty to assist a plaintiff in locating a defendant's address for the purpose of service of process[,]" *Fletcher v. Reilly*, No. 07–cv-331, 2007 WL 2111030, at *1 (D.D.C. Jul. 23, 2007); *Paolone v. Mueller*, No. 05–cv-2300, 2006 WL 2346448, at *2 (D.D.C. Aug. 11, 2006); *Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987). The Marshals' ability to perfect service of process is only as good as the information provided, and currently, Hernandez has only provided the locations of the D.C. Jail and Correctional Treatment Facility as potential service addresses for

Dove and Williams. *See* Mem. ¶¶ 10–11, 15. Indeed, the Court does not even possess Dove or Williams' first names. *See* D.C. LCvR 5.1(c)(1) (requiring a pro se/IFP litigant to provide the full name and address of each defendant or suffer dismissal).

Consequently, before the Court devotes its effort and resources in proceeding forward, Hernandez must show cause why the remaining claims should not be dismissed without prejudice for failure prosecute due to his noted absence from this case, *see* D.C. LCvR 83.23, and he must also submit additional information to better equip the Court to personally serve Dove and Williams, should the case against them continue.

### IV.  CONCLUSION

Accordingly, for the foregoing reasons, the Court hereby **GRANTS** the Defendant District of Columbia's Motion to Dismiss, ECF No. 19, and **DISMISSES** all claims against it **WITH PREJUDICE** for failure to state a claim, and it is further

**ORDERED** that all claims against Defendants Quincy Booth and Wanda Patten are hereby **DISMISSED WITH PREJUDICE** for failure to state a claim, and it is further

**ORDERED** that Plaintiff Victor Hernandez shall **SHOW CAUSE**, by **March 31, 2023,** why the remaining claims should not be dismissed for failure to prosecute pursuant to D.C. LCvR 83.23. Hernandez must also provide, to the best of his knowledge, addresses where Dove and Williams may be personally served with process, *see* Fed. R. Civ. P. 4(e); Super. Ct. Civ. R. Super. Ct. Civ. R. 4(j)(3)(E), and he shall also submit Dove and Williams' full names, badge numbers, and any other identifying information, if available, *see* D.C. LCvR 5.1(c)(1). If Hernandez fails to timely comply with these directives, the remaining claims—the individual capacity claims against Dove and Williams—will be dismissed without prejudice, and this case will be closed.

**IT IS SO ORDERED**.

Date: 3/14/23

ROYCE C. LAMBERTH
*United States District Judge*